UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA EXPORT TERMINAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ILWU-PMA PENSION FUND, et al., <br><br> Defendants. | Case No.  20-cv-08202-JSW <br><br> **ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND, AND SETTING CASE MANAGEMENT CONFERENCE** <br><br> Re: Dkt. No. 41 |

Now before the Court for consideration is the motion to dismiss filed by the ILWU-PMA Pension Plan and the ILWU-PMA Welfare Plan (collectively the "Plans"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it HEREBY GRANTS the Plans' motion, with leave to amend.

## BACKGROUND

**A.      The Facts Underlying the Parties' Dispute.**

On November 20, 2020, Columbia Export Terminal, LLC ("CET") filed its Complaint seeking "a declaratory judgment from the Court that it is entitled to a refund or restitution of overpayments made" to the Plans "as a result of mistake of fact or law[.]" (Compl. ¶ 1 (citing Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1103(c)(2)(A)(ii).)[1]

CET employs members of the International Longshore and Warehouse Workers Union ("ILWU") Locals 8 and 92 at one of its terminals in Portland, Oregon. (*Id.* ¶ 7.) That relationship is governed by a collective bargaining agreement ("CBA"), which contains an arbitration

---

[1]      Each Plan is a multi-employer, employee benefit plan regulated by ERISA. (Compl. ¶¶ 5-6.)

provision.  (*Id.* ¶ 8, Ex. A (CBA, Art. 16, ¶¶ 16-7, 16-8).)  The grievance procedure and arbitration clause apply to "the interpretation, application, or violation of any provision" of the CBA.  (CBA, Art. 16, ¶ 16-3.)  CET alleges that its employees,

> through the walking boss for a given shift, submit to CET time sheets indicating hours each claims to have worked.  CET then submits the time sheets to [Pacific Maritime Association ("PMA")] in California.  PMA processes and issues payroll payments to union workers' individual checking or savings accounts held by various banks in various states, and charges CET for all such payments. Using the hours reported on the time sheets, the PMA also charges CET for PMA assessments, which are then contributed to various PMA/ILWU benefit funds on behalf of the employees, including the [Plans].

(Compl. ¶¶ 11-12.)

"Under the CBA, CET was required to make contributions to [the Plans] based on actual man-hours worked" by the Employees.  (*Id.* ¶ 9 (quoting CBA, Art. X, ¶ 10-3).)  CET alleges it discovered that certain bargaining unit employees ("the Employees") "short-manned jobs" and did not actually work the hours reported on time sheets.  CET describes two practices that allegedly resulted in excess contributions to the Plans:

> One practice involved employees routinely splitting shifts, with one working the first half and the other working the second half, yet submitting time sheets indicating falsely that both had worked the full shift.  Another practice involved employees not showing up at all and yet those who did show up submitting time sheets indicating that the absent employee worked a full shift.

(*Id.* ¶ 13.)  CET's position is that it should not have paid those contributions because the covered employees did not work those hours.  (*See id.* ¶¶ 14-16.)

CET asked the Plans to reimburse the allegedly excess contributions, but the Plans denied its request.  (*Id.* ¶¶ 17-18 & Exs. B-C.)  The Plans took the position that if CET's "claim for return of contributions rests on an argument over whether or not certain time entries were or were not compensable," CET needed to provide the Plans "with an arbitral award or other binding authority interpreting the 2014 collective bargaining agreement.  Absent such authority, the Trustees are unable to determine that the contributions were made by mistake, and on that ground" denied CET's claim.  (Compl., Ex. C at 2.)

2

United States District Court
Northern District of California

**B.     The Racketeering Influenced and Corrupt Practices Act ("RICO") Litigation.**

Before CET filed its Complaint in this case, it sued the ILWU for an alleged violation of the RICO in the United States District Court for the District of Oregon.  CET's RICO claim was based on the same employment practices that CET alleges resulted in the overpayments at issue in this case.  (*Compare* Dkt. Nos. 45, 45-1, Plans' Request for Judicial Notice ("Plans' RJN"), Ex. 1A (*CET v. ILWU*, No. 3:18-cv-2177, Complaint ("RICO Compl."), ¶¶ 9-11 *with* Compl. ¶¶ 11-13.)

On December 20, 2019, the district court in the RICO Litigation dismissed the case, without prejudice, on the basis that the claim was preempted under the Labor Management Relations Act ("LMRA").  (Dkt. Nos. 45-6 and 45-7, Plans' RJN Exs. 1F ("Recommendation"), 1G ("Order").)  That court reasoned that in order to determine whether the Employees committed predicate acts of wire or mail fraud, it would be required to interpret the terms of the CBA.  The court also concluded CET was required to comply with grievance procedures contained in the CBA, which it had not done.  (See Recommendation at 12-13, 18-19; Order at 1 n.1, 5-6.)

CET appealed that decision to the United States Court of Appeals for the Ninth Circuit. In June 2021, the Ninth Circuit affirmed.[2]  *See CET v. IWLU*, 2 F.4th 1243 (9th Cir. 2021), *withdrawn and superseded on denial of reh'g en banc*, 24 F.4th 836 (9th Cir. 2022) ("*CET*"). After the Ninth Circuit issued its ruling, CET filed a petition for a writ of certiorari with the United States Supreme Court.  Before the Supreme Court ruled, CET and ILWU settled the RICO Litigation.  (*See* Dkt. No. 43, Declaration of Kirsten Donovan ("Donovan Decl."), ¶ 4, Ex. A ("Settlement Agreement").)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

The Plans argue this case should be dismissed because: (1) CET's claims are precluded by Section 301 of the LMRA; (2) CET fails to state a claim based on the terms of the Plan

---

[2]     This Court denied the Plans' first motion to dismiss and granted their motion to stay pending a ruling from the Ninth Circuit in the RICO Litigation.  (Dkt. No. 31.)

United States District Court
Northern District of California

1  Agreements; (3) CET failed to exhaust administrative remedies required by the Plan Agreements;

2  and (4) CET agreed not to grieve or otherwise contest the man-hours paid when it settled with

3  ILWU.

4  **A.      Legal Standards.**

5          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted

6  when the pleadings fail to state a claim upon which relief can be granted.  A court's "inquiry is

7  limited to the allegations in the complaint, which are accepted as true and construed in the light

8  most favorable to the plaintiff."  *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

9  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's

10  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

11  conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell*

12  *Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286

13  (1986)).

14          Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

15  must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

16  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

17  draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

18  *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If the allegations are

19  insufficient to state a claim, a court should grant leave to amend, unless amendment would be

20  futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss &*

21  *Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

22  **B.      The Court Rejects CET's Procedural Arguments.**

23          CET argues the Court should deny the Plans' motion because they violated Federal Rule of

24  Civil Procedure 12(g)(2).  That rule provides that if a party omits a defense from a motion to

25  dismiss under Rule 12(b), it cannot raise that defense in a subsequent Rule 12(b) motion.  The

26  Plans originally moved to dismiss on the basis that CET's claims were not ripe but did not move

27  to dismiss for failure to state a claim.  Under Rule 12(g), they cannot raise a 12(b)(6) defense

28  through the current motion.  *See* Fed. R. Civ. P. 12(h)(2) (stating defense may be raised in an

4

1  answer, a motion for judgment on the pleadings, or at trial).

2  However, the Ninth Circuit has been "forgiving" when a district court rules "on the merits

3  of a late-filed Rule 12(b)(6) motion because strict adherence to Rule 12(g)(2) "can produce

4  unnecessary and costly delays." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317-18 (9th

5  Cir. 2017); *see also DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-cv-6385-JSW, 2020 WL

6  10575294, at *2 (N.D. Cal. Mar. 25, 2020) ("[C]ourts have discretion to consider a successive

7  motion under Rule 12(g) if to do so would facilitate judicial economy and efficiency.") (citation

8  omitted).  In light of the Court's decision to stay this matter pending resolution of the appeal in the

9  RICO Litigation and the guidance provided by the *CET* opinion, the Court concludes that

10  resolving the motion would facilitate judicial economy and efficiency.

11  CET also argues that because the Plans submitted the plan agreements and the Settlement

12  Agreement, the Court should treat the motion as a motion for summary judgment, defer its ruling,

13  and permit the parties to engage in discovery.  The Plans submitted the former to support an

14  argument that the Court does not reach, and it has not considered them.  The Court considers the

15  Settlement Agreement solely for purposes of determining whether amendment would be futile.

16  **C.    The Court Concludes CET's Claim Is Precluded by the LMRA.**

17  Relying on *CET,* the Plans argue CET's ERISA claim is precluded by the LMRA.  In order

18  to determine whether a state law claim is preempted by Section 301, a court applies a well-

19  established two-step analysis:

20  [1] Does the claim seek purely to vindicate a right or duty created by
   the CBA itself?  If so, then the claim is preempted, and the analysis
21  ends there.

22  [2] But if not, [the court] proceed[s] to the second step and ask[s]
   whether a plaintiff's state law right is substantially dependent on
23  analysis of the CBA, which turns on whether the claim cannot be
   resolved by simply looking to versus interpreting the CBA.

24

25  *CET*, 24 F.3d at 841-42 (cleaned up).

26  In *CET*, the court applied that same analysis to determine whether the LMRA precluded

27  CET's RICO claim.  It held that a RICO claim would be precluded by the LMRA "when the right

28  or duty upon which the claim is based is created by a CBA *or* resolution of the claim substantially

5

United States District Court
Northern District of California

depends on analysis of a CBA." *Id.* at 844 (emphasis added). That court determined that resolution of CET's RICO claim was "substantially dependent on interpretation of the CBA" and rejected CET's argument that the claim fell outside the scope of the CBA's arbitration provisions. *Id.* at 844-47.

Here, the CBA does not create CET's claim. *See Award Serv., Inc. v. N. Cal. Retail Clerks Unions and Food Emp'rs Joint Pension Trust Fund*, 763 F.2d 1066 (9th Cir. 1985) (holding that an employer has an implied right of action under ERISA to recover contributions made as a result of mistake of fact or law and holding LMRA does not create such a right). CET's claim will be precluded only if it "cannot be resolved by looking to versus interpreting the CBA." *CET*, 23 F. 4th at 842.

CET argues the Court need not interpret the terms of the CBA, relying on a number of cases in which trust funds brought ERISA claims to recover unpaid contributions. The courts in those cases were not asked to consider whether claims were preempted. Further, although the courts determined the terms of the relevant CBAs were not ambiguous, the primary issue was whether the employer was required to make contributions for non-covered work. *See, e.g., McCleskey v. DLF Const., Inc.*, 689 F.3d 677, 679 (7th Cir. 2012); *Board of Trustees of the Sign pictorial and Display Indus. Welfare and Pension Trust Funds v. Event Productions, Inc.*, No. 09-cv-01914-SI, 2010 WL 4179265, at *3 (N.D. Cal. Oct. 20, 2010); *cf. Iron Workers St. Lous District Council Annuity Trust v. United Ironworkers, Inc.*, No. 15-cv-00713-AGF, 2016 WL 4701588, at *(E.D. Mo. Sept. 8, 2016).

In this case, as it did in *CET,* CET argues that the Employees overinflated their actual hours worked through the two schemes described above. Applying the second prong of the preclusion analysis, the Ninth Circuit reasoned that CET would be required to show the workers "knowingly overbilled CET for time not worked" to prove its case. 23 F.4th at 844. The court also noted the defendant argued "the billed hours were expressly authorized by CET and charged in accordance with the CBA and then cited provisions of the CBA "that could excuse the workers from being present at the time of work reported on the timesheets or could explain why workers are compensated for time not actually worked." *Id.* Finally, the court determined that disputes

United States District Court
Northern District of California

1   about the meaning of these terms were "intrinsic to CET's claims as pleaded." *Id.* at 845. Thus,

2   any arguments about ambiguity, or the lack thereof, should be raised within the grievance process.

3   *Id*. CET does not meaningfully engage with that analysis. Although CET brings an ERISA claim,

4   because that claim is based on the same facts that gave rise to the RICO Litigation, the Court

5   concludes the Ninth Circuit's analysis in *CET* governs the question of whether the claim is

6   substantially dependent on interpretation of the CBA. That analysis demonstrates that there is

7   more than a "hypothetical connection between the claim and the terms of the" CBA. *Alaska*

8   *Airlines, Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018).

9          The Court also finds support for its conclusion in *Long*. In that case, the plaintiffs filed an

10   ERISA claim seeking enforcement of their pension plan's summary plan description. 994 F.2d at

11   693. The plaintiffs also were parties to a CBA with their employer, which was subject to the

12   Railway Labor Act's ("RLA") mandatory arbitration procedures. *Id.* at 693-94. Before the

13   plaintiffs filed suit in the district court, an arbitrator issued a ruling and rejected one of the

14   plaintiff's claims. The district court dismissed for lack of subject matter jurisdiction, and the

15   Ninth Circuit affirmed. "In limited circumstances, ERISA does provide independent statutory

16   rights." *Id.* at 695. Those rights include a prohibition against "interference with the attainment of

17   any rights to which a person may become entitled under the provisions of an employee benefit

18   plan that falls within the coverage of ERISA." *Id.* (citing ERISA § 510). However, the court

19   concluded that the plaintiffs' claim did not fall within those limited circumstances. Of particular

20   relevance to this case, the court reasoned that

21          the question whether an employer is interfering with the attainment
            of rights under a pension plan, for example, is a separate issue from

22          the nature of those rights once they are attained by an employee. …
            In contrast, any claim relating to the construction of a pension plan

23          can be transformed into a claim that a summary plan description was
            insufficiently accurate or complete. If a system board of adjustment

24          issues a determination contrary to an employee's construction of a
            pension plan, the employee can always claim that the summary plan

25          [did not comply with 28 U.S.C. § 1022(a)(1).]

26          If we were to find subject matter jurisdiction over such a claim, we
            would eviscerate the [RLA's] system of arbitrating disputes. No

27          longer would the decision of a system adjustment board be the final
            word on disputes "growing out of … the interpretation or

28

1

> application of agreements concerning rates of pay, rules, or working
> conditions." 45 U.S.C. § 184. …

2

3

> The present action, despite being clothed as an independent ERISA
> claim, is an attempt to relitigate the very issue decided by the
> Retirement Board.

4

5  *Id.* (citing *Air Line Pilot's Ass'n, Int'l v. Nw. Airlines, Inc.*, 627 F.2d 272, 275 (D.C. Cir. 1980))

6  ("*ALPA*").

7          In *ALPA*, the defendant argued the plaintiff's ERISA claims were precluded by the RLA

8  because the claims were premised on a dispute about the meaning of the CBA.  627 F.2d at 274.

9  The court of appeals affirmed that portion of the district court's decision to dismiss for lack of

10  jurisdiction.  However, it also found the plaintiff alleged facts that suggested the employer may

11  have violated its fiduciary duty under ERISA, even if the employer correctly interpreted the

12  provisions of the CBA.  *Id.* at 277.  Thus, it held the plaintiff stated a claim that was independent

13  of the dispute over the construction of pension plan for alleged violations "of the obligatory

14  fiduciary standards of ERISA[,]" including the requirement that a plan's assets "shall never inure

15  to the benefit of the employer."  *Id.* at 277-78; *see also* 29 U.S.C. § 1103(c)(2)(A)(ii).  CET has

16  not asserted a similar claim here.

17          The Court concludes that CET's ERISA claim is precluded by the LMRA "insofar as

18  resolution of the … claim requires the interpretation" of the CBA.  *Alaska Airlines*, 898 F.3d at

19  922.  Accordingly, the Court GRANTS the Plans' motion to dismiss.

20  **D.      Leave to Amend.**

21          The Plans argue that the Court should dismiss this case with prejudice because when it

22  settled the RICO Litigation it "release[d] and waive[d] any grievance, cause of action or claim on

23  or pertaining to the events and allegations, in whole or in part, contained" that litigation.

24  (Settlement Agreement ¶ A.)  On this record, the Court cannot conclude as a matter of law that

25  language would preclude CET from pursuing its claims against the Plans.  Accordingly, the Court

26  will grant CET leave to amend.  If CET does amend, the Plans may renew their argument that the

27  terms of the Settlement Agreement bar CET from pursuing this claim.

28

United States District Court
Northern District of California

8

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the Plans' motion to dismiss, with leave to amend.  CET may file an amended complaint by no later than June 6, 2023, if it can do so in good faith and in compliance with its obligations under Federal Rule of Civil Procedure 11.  The Plans shall answer or otherwise respond by June 27, 2023.  The parties shall appear for an initial case management conference on August 4, 2023 at 11:00 a.m., and they shall file a joint case management conference statement on or before July 28, 2023.

**IT IS SO ORDERED.**

Dated: May 16, 2023

JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

9